PATSY FERULLO'S CASE.

Suffolk. May 3, 1954. — September 24, 1954.

Present: QUA, C.J., LUMMUS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Workmen's Compensation Act*, To whom act applies. *Agency*, What constitutes, Independent contractor. *Statute*, Construction.

The Legislature, by enacting St. 1930, c. 205, amending § 26 of c. 152 of the General Laws, intended to change the then existing law to the effect that for the purposes of the workmen's compensation act one who was in the general employ of an insured under the act and was injured while operating a vehicle on a mission which was part of his employment was not an employee but an independent contractor with respect to such operation, and not entitled to compensation, if he had control over such operation. [638]

The general relation of employer and employee must already exist in order to make applicable the provision originally inserted by St. 1930, c. 205, in § 26 of the workmen's compensation act, G. L. (Ter. Ed.) c. 152, that one while operating a vehicle on his employer's business with his employer's general authority shall be conclusively presumed to be an employee for the purposes of § 26. [638–639]

Evidence in a workmen's compensation case that the claimant, while engaged in hauling gravel for the insured, using his own truck driven by himself, was injured when it tipped over; that he was paid weekly a specified sum an hour for truck and driver upon rendering a bill as a "trucking company," and had to pay for his gasoline and oil; that he was at liberty to let another person drive the truck; and that the claimant determined the speed at which he should operate his truck, required a finding that the claimant was an independent contractor and not an employee of the insured. [640] COUNIHAN, J., dissenting.

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the workmen's compensation act.

The case was heard by *O'Connell*, J.

*John T. Foynes*, for the insurer.

*Laurence S. Locke*, for the claimant.

QUA, C.J. This case turns upon the construction of that part of G. L. (Ter. Ed.) c. 152, § 26, as appearing in St. 1943, c. 529, § 8, which was originally inserted by St. 1930,

c. 205, and which reads as follows: "For the purposes of this section any person, while operating or using a motor or other vehicle, whether or not belonging to his employer, with his employer's general authorization or approval, in the performance of work in connection with the business affairs or undertakings of his employer, and whether within or without the commonwealth . . . shall be conclusively presumed to be an employee . . . ."

There appears to be no dispute about the facts. The claimant's own testimony was in substance that on January 26, 1949, while he was engaged by Milano Bros., Inc., in hauling gravel from Danvers to "an M. T. A. job" in East Boston, using his own truck, driven by himself, he was injured by the tipping over of the truck. He was paid $4.50 an hour for truck and driver and had to pay for his gasoline and oil. If for some reason he did not want to drive he could put someone else on the truck. When asked if he would decide how fast to travel he replied that he had to stay within the speed laws. The general manager of Milano Bros., Inc., testified that it made no difference to him if anybody else drove Ferullo's truck, and that when a week was up he got a bill from the claimant as "Ferullo Trucking Company" and paid him for himself and his truck.

The single member found, among other things, that the claimant determined the speed at which he should operate his truck within the limit of the speed laws; that he was not required to drive the truck himself; and that he was an independent contractor and not an employee of Milano Bros., Inc. The single member dismissed the claim. The reviewing board affirmed the findings, rulings, and decision of the single member, but the Superior Court entered a decree in favor of the claimant, from which the insurer of Milano Bros., Inc., appeals.

The claimant takes the position that the act of 1930 created a conclusive presumption that a person in his situation with reference to Milano Bros., Inc., was an employee of that corporation for purposes of compensation.

In spite of the words "any person" we are not convinced that this is the meaning of the act.

Statutes are to be construed in the light of the preëxisting common and statutory law with reference to the mischief probably intended to be remedied. *Tilton* v. *Haverhill*, 311 Mass. 572, 577. *Boston* v. *Quincy Market Cold Storage & Warehouse Co.* 312 Mass. 638, 643. *Johnson's Case*, 318 Mass. 741, 746–747. *Meunier's Case*, 319 Mass. 421, 423. It is not to be lightly supposed that radical changes in the law were intended where not plainly expressed. *Commissioner of Corporations & Taxation* v. *Dalton*, 304 Mass. 147, 150. "General expressions may be restrained by relevant circumstances showing a legislative intent that they be narrowed and used in a particular sense." *Commonwealth* v. *Welosky*, 276 Mass. 398, 402. The construction urged by the claimant seems to us inconsistent with the previous history of the subject matter, with the wording of the act itself, and with intimations in subsequent decisions.

Before the statute of 1930 it had long been settled that at common law, where an owner of a vehicle let it out with a driver to a person who gave directions as to where he desired the vehicle to go and what work he desired to have done, but had no control over the method of driving, the driver remained in the employ of the owner and did not become the employee of the hirer. *Shepard* v. *Jacobs*, 204 Mass. 110. *Clancy's Case*, 228 Mass. 316. *Mahoney* v. *New York, New Haven & Hartford Railroad*, 240 Mass. 8, 10–11. *Wall's Case*, 293 Mass. 93. A fortiori, if the lender drives his vehicle himself and retains control over the method of driving, he is an independent contractor and not an employee of the hirer. *Centrello's Case*, 232 Mass. 456. *Pyyny* v. *Loose-Wiles Biscuit Co.* 253 Mass. 574. *Khoury* v. *Edison Electric Illuminating Co.* 265 Mass. 236, 238. *Strong's Case*, 277 Mass. 243. *Reardon* v. *Coleman Bros. Inc.* 277 Mass. 319. This is the ordinary situation where a taxicab is driven by its owner. It was also clear that the workmen's compensation law did not give protection to drivers who were independent contractors. *Centrello's Case*, 232

Mass. 456, 457. *Winslow's Case*, 232 Mass. 458. *Eckert's Case*, 233 Mass. 577. *Robichaud's Case*, 234 Mass. 60. But it had been further held not long before the passage of the 1930 statute that, even though the driver was in the general employ of the insured as an employee and not as an independent contractor, if he drove a vehicle and had control over the actual driving, he immediately ceased to be an employee with respect to the driving, even if he was driving on a mission that was part of his employment. *Bradley's Case*, 269 Mass. 399. A similar decision was made in *Schofield's Case*, 272 Mass. 229.[1] The proposition established by these cases is clearly stated in *Child's Case*, 274 Mass. 97, 98–99, where the injury had occurred before the passage of the statute, but the case was decided by this court after its passage. See *Hardaker's Case*, 274 Mass. 7; *Wescott* v. *Henshaw Motor Co.* 275 Mass. 82, 87–88.

We think it was the law as declared in this last group of cases which the act of 1930 was intended to change. It might well be thought a hardship that an employee while still engaged in his employer's work should lose all compensation the moment he started to drive a vehicle, even though the method of driving was not subject to dictation by the employer. Such a hardship could be corrected by a comparatively simple change without breaking down the general distinction between employees and independent contractors which underlies the whole compensation law. Under this construction of the act of 1930 the general relation of employer and employee must exist before the presumption of the statute can become operative, and the effect of the presumption is to continue in force the obligations of the compensation law while the employee drives on his employer's business.

This construction is consistent with the title of the act of 1930 which is "An Act relative to the payment of compensation under the workmen's compensation laws for in-

---

[1] The decision of this court was not made until after the passage of the act of 1930, but it seems that the question must have been raised in the Industrial Accident Board before that.

juries received *by employees* while operating or using motor or other vehicles."[1]  It explains the otherwise strange wording of the statute which refers three times to "his employer." These are apt words to use in reference to an employment assumed already to exist, but they are not apt for the purpose of creating an entirely new employment in the absence of any existing employment relation.  These words show that "any person" means any person employed and does not comprehend persons not already in an employment relation.

The decisions since the act of 1930 became operative are consistent with our present construction of that statute. *Manley's Case*, 280 Mass. 331, was a case in which a general employment previously existed, and what is said about the statute must be read as applicable to such a case.  It was said that the act was passed to modify the law as found in cases like *Schofield's Case, Child's Case,* and *Hardaker's Case,* hereinbefore cited.  In *Higgins's Case*, 284 Mass. 345, 347, it was said that prior to the amendment of 1930 one operating his own automobile was deemed an independent contractor and not an employee with reference to that operation, although he might have been an employee with reference to other parts of his work, but under that amendment he *"remained"*[1] an employee while operating his automobile.  In *Campbell's Case*, 288 Mass. 529, 530–531, it was said that the act of 1930 "was enacted, to the effect that *a general employee remained an employee*[1] 'while operating or using a motor or other vehicle, whether or not belonging to his employer, with his employer's general authorization or approval, in the performance of work in connection with the business affairs or undertakings of his employer,' and such person who receives a personal injury 'shall be conclusively presumed to be an employee.'" In every case in which the amendment of 1930 has been applied or discussed there has been, when the driving began, an existing employment, not created by force of the pre-

---

[1] Emphasis supplied.

sumption, to which the amendment could attach itself. In addition to cases already cited, see *Harvey's Case*, 295 Mass. 300; *Cahill's Case*, 295 Mass. 538; *Noble* v. *Greenbaum*, 311 Mass. 722. In our opinion none of the previous decisions is in conflict with what is here decided.

We do not believe it was the purpose of the act of 1930 to turn every driver of his own vehicle into an employee of every person for whom he does work. If it had that effect it would seem that the driver of his own taxicab would become by conclusive presumption of law the employee of any person who, while about his business, hailed the cab. Neither do we think the act was intended to make a person in the position of the present claimant an employee whenever he himself does the driving but to leave him an independent contractor when he sends another driver with his vehicle. The board found that the claimant was an independent contractor. On the authority of the cases hereinbefore cited we think the evidence as to the nature of his engagement by Milano Bros., Inc., required a finding that the claimant was at all times an independent contractor and never became an employee. *Strong's Case*, 277 Mass. 243. The act of 1930 has no application to the case.

The decree is reversed, and a decree is to be entered dismissing the claim.

*So ordered.*

COUNIHAN, J. I regret that I am unable to concur in the opinion of the majority of the court in this case. For reasons which shall hereinafter appear I am of opinion that this case should be recommitted to the Industrial Accident Board for further findings of fact.

I am unable to agree with the opinion in so far as it is predicated upon the proposition that the evidence would not warrant a finding that the underlying general relationship between the assured and the claimant was that of employer and employee. I believe such a relationship could be found to exist, and in this connection it seems sufficient to direct attention to the testimony of the general

manager of the assured as it appears in the record: "Asked if he ever laid off Ferullo, witness replied 'I don't believe I ever laid off Mr. Ferullo, he was my longest employee.'"

The sole issue therefore is whether or not such a general relationship did exist for the majority opinion appears to indicate that, if it did, the claimant would be entitled to an award under that part of G. L. (Ter. Ed.) c. 152, § 26, which was originally inserted by St. 1930, c. 205.

I think it necessary to recite the findings of the single member which were as follows: "The first issue resolves itself as to whether the claimant was an independent contractor or an employee of the assured. On this issue I find, on the evidence, these to be the material facts: that the claimant, Patsy Ferullo, was the owner of a dump truck, that he entered into an agreement with Milano Bros., Inc., the assured, whereby the claimant was to furnish his truck and driver to the assured for the purpose of hauling gravel from a gravel pit in Danvers to East Boston, for which he was to receive for the services of his truck and driver $4.50 per hour for each hour that the truck and driver was so engaged; that under the agreement the claimant himself was not required to be the driver of the truck but could at his option furnish anyone to drive it; that the assured had a contract to haul gravel for an M. T. A. project in East Boston and used his own trucks on this job, and in addition thereto, hired other truck owners' trucks also under agreements similar to the one with the claimant; that the assured listed the drivers of its own trucks on its payroll as its own employees and so considered them, paying the required social security payments, etc., but did not consider the drivers of the hired trucks as such, and did not carry them on its payroll as its employees. I also find that under the agreement, the claimant worked on such days and for such hours as the assured requested him, and that the assured could lay off his truck at his pleasure; that his usual orders for [from?] the assured when his truck worked, was to be at the pit at Danvers at 7:00 A.M. where it would

be loaded under the shovel of the assured and under the direction and supervision of an employee of the assured, and that when he arrived at the East Boston destination, he was likewise directed by an employee of the assured where to dump his load. I also find that the claimant had previously hired his truck with driver to the assured on other jobs and with respect to this particular job, had hired it to the assured for a period of about six months prior to January 26, 1949, the date of his injury; that following his injury he continued to hire out his truck with a driver other than himself until he had sufficiently convalesced from his injuries, when he again resumed the driving of the truck himself, until he terminated his contract with the assured; that the hours the truck worked were checked by both employees for the assured and the claimant and that it was the custom of the claimant at the end of the week to bill the assured at the rate of $4.50 an hour for the hours that his truck and driver worked during the week. I also find . . . from uncontradicted testimony of the claimant that the assured determined the number of trips to be made per day and that the claimant determined the speed with which he operated his truck within the limit of the speed laws."

There was the further uncontradicted testimony of the claimant that "When he delivered that load on January 26, 1949, there was snow and ice on the ground and he had to go back for another trip. He did not want to, but when he got to the pit he got a load. He could not make the grade on a hill and the truck tipped over at Danvers. He hurt his shoulder and arm."

After these findings, the single member stated that "there is no evidence that the assured in any way exercised any control over the claimant with respect to the method and manner by which the claimant should operate his motor vehicle," and as a result he in effect ruled that such cases as *Hewitt's Case*, 225 Mass. 1, *Schofield's Case*, 272 Mass. 229, and *Hardaker's Case*, 274 Mass. 7, compelled the conclusion that the claimant was an independent contractor in so far as the operation of the motor vehicle was concerned

when he was injured and therefore not an employee of the assured. From this conclusion, without advertence to G. L. (Ter. Ed.) c. 152, § 26, as appearing in St. 1943, c. 529, § 8, the relevant part of which first appeared in St. 1930, c. 205, he denied compensation.

The claimant, however, relies upon G. L. (Ter. Ed.) c. 152, § 26, as amended, the material part of which reads: "For the purposes of this section any person, while operating or using a motor or other vehicle, whether or not belonging to his employer, with his employer's general authorization or approval, in the performance of work in connection with the business affairs or undertakings of his employer, and whether within or without the commonwealth, . . . shall be conclusively presumed to be an employee." Statute 1930, c. 205, was first passed upon in *Manley's Case*, 280 Mass. 331. Although compensation was there denied because it was held that this statute was not retroactive, it was said at pages 334–335, "St. 1930, c. 205, obviously, was passed to modify the law as it was found to be in the decisions referred to and in similar decisions which had held that one who furnished a motor vehicle for his own use in the business of his employer, over the control and operation of which the employer exercised no dominion, stood with reference to that vehicle as an independent contractor and not as an employee of the employer, so that, if injured while operating the vehicle, he had no right to compensation under the workmen's compensation act. It gave to persons injured while operating a motor vehicle with their employer's general authorization or approval in the performance of work in connection with the business affairs or undertakings of the employer, even if, by the earlier law, they stood as independent contractors with reference to the vehicle, a new standing as employees, under G. L. c. 152, § 26, as amended. The fundamental reason for denying compensation in the cases cited was that the injury did not arise out of the business of the employer although received in the course of that employment and so was not within the sweep of the workmen's compensation

law. *Hewitt's Case*, 225 Mass. 1, 3. The change made by the statute of 1930 extended recovery under the compensation act to specified injuries which arise out of the business of an independent contractor, if incurred in the course of the employer's business while pursuing a course of action approved by him. The Legislature, apparently, concluded that such injuries should be treated as if arising out of the business of the employer. The statute makes no change with reference to the liability of the employer to third persons, if any, injured in the accident. By its terms it is confined to the purpose of G. L. c. 152, § 26, as amended — to questions of compensation under the compensation act. It thus created a new right; and modified the substantive duty of insurers upon whom it imposed a liability not theretofore existing."

This statute as construed in *Manley's Case* in effect provides that compensation is dependent not upon the relationship of the parties solely as to the operation of the motor vehicle, as was the case prior to St. 1930, c. 205, and appears to have been so held in the cases relied upon by the single member, but rather upon the general relationship of the parties.

The effect of St. 1930, c. 205, has been similarly declared in *Higgins's Case*, 284 Mass. 345, 347, *Harvey's Case*, 295 Mass. 300, and *Noble* v. *Greenbaum*, 311 Mass. 722, 725–726. Compare *Campbell's Case*, 288 Mass. 529.

I am of opinion that the facts in this case are substantially similar to the facts in *Noble* v. *Greenbaum*, 311 Mass. 722, and that what was said there at pages 725–726 is applicable here. "The plaintiff, however, was an employee of the defendant. . . . He was not only an employee at common law, but he was also an employee under the workmen's compensation act when he was injured. Both parties understood that the plaintiff under his contract of employment was to furnish and operate his own truck in the rendition of the services that he had undertaken to perform for the defendant. His status as an employee would be retained if he was injured while operating or using the truck.

General Laws (Ter. Ed.) c. 152, § 26, in so far as material, provides that 'any person while operating or using a motor or other vehicle, whether or not belonging to his employer, with his employer's general authorization or approval, in the performance of work in connection with the business affairs or undertakings of his employer . . . and, while so performing such work, receives a personal injury, shall be conclusively presumed to be an employee.' If when he was injured he was so employed, it would be immaterial whether or not he was then employed in the usual course of the defendant's business, provided he was then operating or using the truck in furtherance of the business of the defendant. And this would be true even though the defendant had no voice in the method or manner in which the plaintiff should operate or use the truck in the performance of services for the defendant. Indeed, it has been said that the quoted provision of § 26 gives 'the status of an "employee" to one who, if driving his own automobile while engaged in the business of his employer in the circumstances there described, would, under the preëxisting law, be an independent contractor and not entitled to compensation under the workmen's compensation act.'"

For other cases where the claimant has been held to be an employee rather than an independent contractor regardless of St. 1930, c. 205, see *McDermott's Case*, 283 Mass. 74; *Wall's Case*, 293 Mass. 93; *O'Hara's Case*, 310 Mass. 223, 226.

The record here does not disclose that St. 1930, c. 205, or *Manley's Case* was brought to the attention of the single member. Clearly the rule in the cases relied upon by the single member and in *Strong's Case*, 277 Mass. 243, relied upon by the insurer, was modified by *Manley's Case*, because of St. 1930, c. 205. Such a rule is no longer applicable in the circumstances of the case at bar so that the single member was in error in disregarding this statute in arriving at the conclusion that the claimant was an independent contractor. His reliance upon the cases cited in his findings, all of which were modified by St. 1930, c. 205, and by *Manley's Case*, convinces me that he erred as matter of law.

The reviewing board affirmed the findings, rulings, and decision of the single member and denied the claim for compensation. I am not at all certain that it did not arrive at that conclusion by considering the claim as not compensable in consequence of the erroneous rulings of the single member. In these circumstances the decision of the board ought not to stand. *Lysaght's Case*, 328 Mass. 281, 285.

The claimant argues that St. 1930, c. 205, in circumstances like those in the case at bar creates a conclusive presumption that the claimant is an employee of the assured. I do not agree. I am in accord with the majority opinion that in order that this statute become operative the relationship of employer and employee in some form must be established.

It may be well to emphasize that the degree of control and the relative weight accorded factual indicia of control (see Restatement: Agency, § 220) required to constitute one an employee as that term is used in the compensation statute involve considerations not present when confronted with the same issues pertaining to the vicarious liability of the master for acts of his servant. A constricted interpretation of the word employee would not comport with the beneficent purpose of the compensation statute as a whole. In a case involving the social security act, *United States* v. *Silk*, 331 U. S. 704, at page 712, it was said, "Such an interpretation would only make for a continuance, to a considerable degree, of the difficulties for which the remedy was devised and would invite adroit schemes by some employers . . . to avoid the immediate burdens at the expense of the benefits sought by the legislation." See *National Labor Relations Board* v. *Hearst Publications, Inc.* 322 U. S. 111; *Gordon* v. *New York Life Ins. Co.* 300 N. Y. 652; *Bowser* v. *State Industrial Accident Commission*, 182 Ore. 42.

There is no finding in the decision of the single member or of the reviewing board, apart from the finding that at the time of the injury the claimant was operating the truck as an independent contractor, that the relationship of employer and employee generally did or did not exist between

the assured and the claimant nor may we imply such a relationship from the decree of the judge for he is precluded from finding facts different from those found by the reviewing board. *Filosa's Case*, 295 Mass. 592, 596. I believe the decree should be reversed and the case be recommitted to the Industrial Accident Board for further findings of fact upon the evidence already heard, not inconsistent with what is hereinbefore said. *Lysaght's Case*, 328 Mass. 281.